REQUESTED BY: Donald E. Sorensen, Commissioner, Nebraska Department of Labor
Is a boiler which is being used on a honey farm to process honey and cook bee food used for `agricultural purposes?'
Is a boiler situated in a feed mill and used to soften grain or hay in the process of making feed being used for `agricultural purposes?'
Is a boiler used in a beet sugar plant for processing the raw agricultural product into commercial sugar, which processes include drying and forming, being used for `agricultural purposes?'
Yes.
No.
No.
Neb.Rev.Stat. § 48-706(4) (Reissue 1977) exempts `boilers used exclusively for agricultural purposes' from state inspection by the Department of Labor. In your letter of May 11, 1983, you have asked whether certain uses of boilers are for `agricultural purposes' and, therefore, exempt from your Department's purview.
Our Supreme Court has not yet had the occasion to provide a definition of `agricultural purposes' as used in the state boiler inspection laws. The legislative history is likewise silent on the subject. This office previously considered this exemption as related to the use of a steam boiler by a dairy farmer to sterilize cans, pails and bottles used in connection with a milk route he operated in Lincoln. We concluded that `a boiler used in connection with a dairy farm is used exclusively for agricultural purposes.' 1945-46 Opinion of the Attorney General, page 346 (February 2, 1945).
Webster's New World Dictionary, Second College Edition (1970), defines `agriculture' as `the science and art of farming; work of cultivating the soil, producing crops and raising livestock.' It should be noted that the definition emphasizes the initial production of the crop or, insofar as domestic animals are concerned, the raising of them. As the process moves away from the cultivation, planting and harvesting aspects of farming or the calving and feeding aspects of ranching it is less likely that the use of boiler would be for `agricultural purposes.'
This construction of `agricultural purposes' which basically confines it to the origination of the raw farm product, we believe, would more likely be found to be constitutional than a broader construction. The clear purpose of the boiler inspection laws is to protect the public from injury caused by the explosion of unsafe pressurized vessels. There must be some characteristic of boilers used for agricultural purposes which would justify their exclusion from the statutorily required inspections. This characteristic might be that they are used in a farm setting away from concentrated populations or might be that agriculturally related uses of boilers are less likely to generate sufficient pressures to pose the hazards of serious explosion.
A broader construction of the `agricultural purposes' exception to include the bulk processing of farm products away from the location where they were grown would result in the exception being of questionable constitutionality under the Equal Protection Clause of the federal constitution and Article III, Section 18 of the Nebraska Constitution prohibiting special legislation because there is a great potential for the processing to be done in urban areas, utilizing the same boiler pressures as used in other commercial enterprises.
Turning to your specific questions, you have asked whether a boiler used on a honey farm to cook bee food and process honey is being used for `agricultural purposes.' You have indicated that the honey crop is not marketed to the consumer and is produced from farm crops on land where the beekeeper leases his locations.
First is the question of whether the harvesting of honey from bees is `agricultural' in nature, Neb.Rev.Stat. 81-2, 166 (Reissue 1981) provides an answer to this question. This statute provides in part: `Beekeeping shall mean the moving, raising and producing of bees, beeswax, and honey, which is an agricultural pursuit.'
Next is the question of whether the specified uses of the boiler by the honey farm are too far removed from the production of the raw product to qualify for the exemption. Cooking the bee food would clearly appear to qualify. Processing the honey is not so obvious. However, it is indicated that the honey is not marketed to the consumer which suggests that further processing of some sort if required. Additionally, we can see no basis for distinguishing the use of a boiler by a honey farm to process honey from the use of a boiler by a dairy farm to process milk, which we had already determined to be exempt.
You next ask concerning a boiler used by a feed mill to soften grain or hay in the process of making feed. Since the feed mill is a commercial enterprise separate from the farm or ranch on which the livestock are raised, its use of a boiler is not used exclusively for agricultural purposes within the meaning of § 48-706.
The final question involves the use of a boiler by a beet sugar plant to dry, form and otherwise process raw beets into commercial sugar. Again, since the boiler's user is a commercial enterprise separate from the location where the farm product is grown, the boiler is not excluded from inspection. Additionally, you have indicated that the boiler is used for the many processes applied to refine the raw agricultural product. In our opinion this use of the boiler is too far removed from the growing of the crop to qualify for the exemption, even had the beet farmer been employing the boiler for this purpose on his own farm.
Very truly yours, PAUL L. DOUGLAS Attorney General Mark D. Starr Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General